IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

STEPHEN R. ALLEN, as Administrator
of the Estate of J.R.A., a Minor, Deceased                          PLAINTIFF

VS.                                   CASE NO. 4:23-CV-661-JM

THE NATURE CONSERVANCY;
CLAYTON WORD; and
FEDERAL INSURANCE COMPANY                                DEFENDANTS

<u>ORDER</u>

This case arises out of the tragic drowning death of seven-year old J.R.A.  Stephen Allen

is the father and administrator of his son's estate.  He named three defendants in this wrongful

death and survival action:  The Nature Conservancy ("TNC"); one if its former employees,

Clayton Word; and Federal Insurance Company ("Federal"). Pending are Plaintiff's motion to

remand, TNC and Word's motion to dismiss, and Federal's motion to dismiss.  All three are ripe

for decision.

<u>Background Facts</u>[1]

The Allen family was on a family trip in when they discovered the Lydalisk Bridge over

the Middle Fork of the Red River in Stone County, Arkansas. This is a concrete low-water bridge

with ten culverts to allow water to flow through, also referred to as a vented dam. The morning

of June 19, 2021, the family noticed that water was flowing about four inches over the bridge.

The culverts were submerged and barely visible. J.R.A. entered the river on the inlet side of the

culverts, staying close to his mother. Shortly thereafter and without warning, he was pulled into

one of the culverts by the current where he became trapped.  Plaintiff was able to free his son

after a period of about ten minutes, but he died the following day. There were no posted signs or

---

[1] Taken from the complaint (Doc. No. 2).

other warnings regarding underwater currents.

The Nature Conservancy is a non-profit corporation that owned the undeveloped and unenclosed tracts of land on both sides of the Middle Fork of the Red River where the accident occurred. The Bridge existed on the land when it was purchased by TNC in February of 2019 as part of County Road 195. In April of 2021, TNC commissioned site reviews of the Lydalisk Bridge and another low-water vented bridge on nearby land that it owned, the Alberg Bridge. The site reviews were performed by an engineer with the West Tennessee River Basin Authority. Plaintiff alleges that Clayton Word was the project manager of "the projects being undertaken" at both bridges. (¶ 38).

The engineer's site report of the Alberg Bridge was completed in May 2021, the month before the accident. (Doc. No. 2, p. 25). In addition to expressing ecological concerns about the structure of the bridge, the report also warned that "the existing pipes also present a safety concern for anyone using the area for recreation" with "the inlet for the pipes is often submerged and approach velocities near the pipes are enough to pull a person in to the pipe flow." (*Id.* ¶ 40). The report also stated that "at least one case of [a person being pulled into the pipe flow] was reported by local fishermen." (*Id.* ¶ 42). The site report for the Lydalisk Bridge was completed in August 2021.  It contained the same concerns for the danger of the inlet pipes to swimmers and reported the occurrence of J.R.A.'s fatal accident.

Plaintiff filed this action in the Circuit Court of Pulaski County, Arkansas where his family resided at the time of the accident. Defendants filed a notice of removal asserting federal subject matter jurisdiction on the basis of diversity. 28 U.S.C.  1332(a).  This requires that the amount in controversy exceed $75,000[2] and that "*[n]o* plaintiff can be a citizen of the same state

---

[2] It is undisputed that the amount in controversy exceeds the threshold requirement.

as *any* defendant." *M & B Oil, Inc. v. Federated Mut. Ins. Co.*, 66 F.4th 1106, 1109 (8th Cir. 2023).

<u>Motion to Remand</u>

The Court must first determine if it has subject matter jurisdiction. It is Defendants' position that while Word is a resident of Arkansas as is Plaintiff, he was fraudulently joined to destroy diversity. The issue before the Court is whether Defendants have met their burden of proving that Plaintiff's claim against Word has "no reasonable basis in fact and law." *Halsey v. Townsend Corp. of Indiana*, 20 F.4th 1222, 1226 (8th Cir. 2021) (quoting *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)).

Plaintiff's sole claim against Word is for negligence.  The complaint alleges that Word was TNC's project manager and had "overall responsibility" for certain evaluations, analyses, and construction work to be performed on the Lydalisk Bridge where J.R.A. drowned. Plaintiff alleges that the engineering analyses and resultant bridge reports expressly warned Word about the existence of safety concerns due to the often-submerged culvert inlets that were strong enough to pull a person into the culvert.  Plaintiff also alleges that Word failed to post any warnings after being made aware of the dangers, and Arkansas law imposed a duty on him as a person with superior knowledge of the danger posed by the bridge.

In response to Plaintiff's motion to remand, Defendants submitted the affidavit of Jeff Fore, Word's supervisor at the time of the accident. (Doc. 27-1). Fore stated that Word had "no role in the stewardship and management" of the subject property, or in any of TNC's property, in his role as River Conservation Manager. He expressly contradicts Plaintiff's allegation that Word had overall responsibility for the Lydalisk Bridge and denies that Word could have taken any of the safety measures suggested by Plaintiff.

Plaintiff takes the position that his complaint contains sufficient allegations to establish that Word owed a duty to J.R.A. He does not submit any evidence in support of either his motion to remand or his response to the motion dismiss, which he incorporates. Plaintiff argues he is entitled to the benefit of the doubt, that the allegations of his complaint must be taken as true at this stage.  But that is not the case when, as here, the jurisdictional challenge is of a factual nature rather than a facial challenge. *Branson Label, Inc. v. City of Branson, Mo.*, 793 F.3d 910, 915 (8th Cir. 2015) (In a factual challenge, the nonmoving party does "not enjoy the benefit of the allegations in its pleadings being accepted as true."). The Court in this instance is required to "weigh the evidence and satisfy itself   . . . of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). This includes consideration of affidavits and other evidence outside the pleadings.  *Branson Label*, 793 F.3d at 914.

In his motion to remand, Plaintiff argues several cases to support his claim that Word owed a duty to J.R.A. under Arkansas law.  First, he cites to *Stiewel v. Borman*, 37 S.W. 404 (Ark. 1896) for the proposition that there is "no sound reason why a person who, acting as principal, would be individually liable to third persons for an omission of a duty, becomes exempt from liability for the same omissions of duty because he was acting as servant or agent." *Id.* at 406. However, both *Stiewel* and the 1894 Alabama Supreme Court case from which Plaintiff's quote is taken[3] gave that opinion in the context of an agent "who has the complete control and management of the property." *Stievel* at 405. Defendant has established by affidavit that Word had no control over the property.

Next Plaintiff cites to *Watkins v. Arkansas Elder Outreach of Little Rock, Inc.*, 420

---

[3] *Mayer v. Thompson-Hutchison Bldg. Co.*, 104 Ala. 611, 16 So. 620 (1894).

S.W.3d 477 (Ark. 2012) to argue that an employee can have personal liability for torts committed in the course and scope of his employment as long as the employee was "personally involved in the events surround an injury." In *Watkins*, a nursing home administrator was granted summary judgment on the evidence that she was never personally involved in any way in the care and treatment of the resident that was the subject of the wrongful death action. Similarly, through the affidavit of Jeff Fore, Defendants have established that Word was not personally involved in the stewardship of the Lydalisk Bridge.

Finally, Plaintiff relies on *Missouri Pac. R. Co. v. Lemons*, 127 S.W.2d 120 (Ark. 1939) for the proposition that a person with superior knowledge of a danger has a duty to warn a person who is unaware of the danger. His reliance is misplaced. *Lemons* involved the last clear chance doctrine and the relative duties of the train engineer and the driver of an automobile as both approach a crossing.  In each of the thirteen cases *Lemons* has been cited since it was decided in 1939, the discussion was limited to the duty of a railroad or its employee to warn at railroad crossings.  It has no application to the issue of what duty is owed under the facts of this case.

On this record, the Court finds that Word was fraudulently joined. The conclusory allegations of Word's alleged responsibilities for the Lydalisk Bridge have been disproved by Defendants' evidence.  The site reports Plaintiff attached to his complaint do not mention Word by name or otherwise indicate that he received them. The complaint contains no detailed factual allegation or evidence to permit the Court to draw the inference that Word owed a duty to J.R.A. Whether as a premises liability claim as argued by TNC or a simple negligence claim as argued by Plaintiff, the Court is convinced that Plaintiff lacks a reasonable basis for a claim against Word.

The Court is unpersuaded by Plaintiff's alternative arguments for remand (comity and

federalism considerations). The motion to remand is denied, and the claims against Word will be dismissed without prejudice for lack of subject matter jurisdiction. *See Wivell v. Wells Fargo Bank, N.A.*, 773 F.3d 887, 896 (8th Cir. 2014) (dismissal of non-diverse defendant is pursuant to 12(b)(1) rather than 12(b)(6)). With his dismissal, the Court finds that it has subject matter jurisdiction over this controversy.

TNC's Motion to Dismiss[4]

TNC has moved to dismiss Plaintiff's negligence claims against it for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6). A complaint must contain "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   The complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests and must also contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Id.*

TNC makes four arguments for dismissal. Each hinges on whether TNC owed a duty to J.R.A. The Court will address the arguments in the order in which TNC presented them, noting at the outset, however, that it finds merit only in TNC's final argument.

First, TNC argues that it did not own the site where the accident happened—specifically the water and the bridge—and, therefore, had no duty to inspect, repair, or warn of any conditions on the property.  It argues that the Lydalisk Bridge is part of County Road 195 and as such as owned by Stone County, citing to Arkansas statutes declaring county roads to be public

---

[4] Word joined in this motion to dismiss, but his arguments will not be addressed given his dismissal pursuant to Rule 12(b)(1).

roads and the responsibility of the county.[5]  The Middle Fork of the Little Red River, it asserts, is a navigable waterway and thus is held by the State in trust for the public. To support its argument that this portion of the river is navigable and thus public, TNC points to the following allegation in Plaintiff's complaint: "Low water bridges and the streams they traverse . . are commonly used for outdoor recreation.  Activities such as fishing, swimming, or canoeing are commonplace."[6] The Court finds that these allegations are insufficient to establish the river's navigability at the accident site and thus the state's ownership of the river.  Plaintiff alleged that the TNC owned or was otherwise in control of the property on which the Lydalisk Bridge was located and had commissioned an engineer's site review of the bridge prior to the accident.  Drawing all reasonable inference in favor of Plaintiff, his allegations are sufficient to state a claim against TNC as the owner of the property.

TNC's second argument is based on J.R.A.'s legal status on the property.  TNC argues that J.R.A. was "at most" a licensee, on the property for his own purpose and not for mutual benefit; that TNC was unaware of his presence on the property; and therefore, it owned no duty to J.R.A.[7] The duty a landowner owes to a licensee is to refrain from injuring him through willful or wanton conduct, defined as "a course of action which shows a deliberate intention to harm or utter indifference to, or conscious disregard of, the safety of others." *Bader v. Lawson*, 320 Ark. 561, 565, 898 S.W.2d 40, 43 (1995).  A landowner "must also warn a licensee of hidden dangers

---

[5] Ark. Code Ann. §§ 27-66-201-202; 14-298-101; 14-299-101, -102.

[6] Doc. No. 2, ¶ 30.

[7] Plaintiff argues that J.R.A. was a public invitee by virtue of what he calls TNC's open invitation to the public to use its property for recreation.  The duty of a landowner to an invitee is to "exercise ordinary care to maintain the premises in a reasonably safe condition" and includes a duty to warn an invitee of "defects or conditions such as hidden dangers, traps, snares, pitfalls and the like" that "are known to the owner but not to the invitee and would not be observed by the latter in the exercise of ordinary care." *Dye v. Wal-Mart Stores, Inc.*, 300 Ark. 197, 777 S.W.2d 861 (1989); *Dollar Gen. Corp. v. Elder*, 600 S.W.3d 597, 603 (Ark. 2020). The Court need not determine whether J.R.A. was a licensee or a public invitee to rule on the motion to dismiss.

if the licensee does not know or have reason to know of the risk." *Lively v. Libbey Mem'l Physical Med. Ctr., Inc.*, 311 Ark. 41, 47, 841 S.W.2d 609, 613 (1992).  Under Arkansas law, this duty arises once the presence of the licensee is known *or reasonably should be known.  See* Ark. Model Jury Instr., Civil AMI 1103; *Daniel Const. Co. v. Holden*, 266 Ark. 43, 49, 585 S.W.2d 6, 9–10 (1979).

The Court finds Plaintiff has adequately pleaded the existence of a duty to J.R.A. and a breach of that duty. It is reasonable to infer from Plaintiff's allegations that TNC should have known that members of the public were using the location for recreational purposes.  Doc. No. 2, ¶ 30. Likewise, the allegations that TNC had notice in May of 2021 of the serious danger to recreational users of the property posed by the similarly constructed Alberg Bridge permits the inference that TNC acted with utter indifference or conscious disregard of the safety of others in not warning of the danger posed by the hidden danger of the submerged culverts by the time of J.R.A.'s fatal accident on June 19, 2021.

For its third ground for dismissal, TNC argues that Plaintiff has not plausibly alleged that it voluntarily undertook any duties regarding the Lydalisk Bridge. Under Arkansas law a party with no legal duty to a third-party can become liable to another by undertaking a duty—either by agreement or by conduct—and performing it negligently. *Steward v. McDonald*, 330 Ark. 837, 841, 958 S.W.2d 297, 299 (1997) (quoting *Keck v. American Employment Agency, Inc.,* 279 Ark. 294, 652 S.W.2d 2 (1983); and Restatement (Second) of Torts § 323 (1965)).  Plaintiff alleges that TNC "undertook a duty to use ordinary care to identify and guard against safety deficiencies associated with the Lydalisk Bridge" and the risks posed to recreational users of the bridge and the surrounding stream. It supports this allegation with reference to TNC's conduct in commissioning an engineer's site review of both the Arlberg and the Lydalisk Bridges, both of

which are attached as exhibits to the complaint. The allegations of the complaint allow the reasonable inference then when it received the site review of the Arlberg Bridge that it had commissioned, and the report warned against the "very real" risk of approach velocities at the culverts' intakes that were strong enough to pull a person into the pipe flow, that TNC breached the duty it had undertaken to guard against the hidden safety risk of both bridges.  TNC argues that even if had become aware of the risks associated with the Lydalisk Bridge, it had no duty to warn of the risks located on someone else's property because it did not own the bridge or the river, citing *Gray v. Marianna Hous. Auth.*, 2020 Ark. App. 203, 6, 599 S.W.3d 337, 340 (2020). However, as discussed above, the issue of navigability of the river at the accident site has not been conclusively determined, and Plaintiff must be given all reasonable inferences at this stage. The Court finds that the issue of whether TNC assumed a duty survives its motion to dismiss.

TNC saves for last its argument that the Arkansas Recreational Use Statute, Ark. Code Ann. § 18-11-301 *et seq*. ("ARUS") bars Plaintiff's claims. "Generally, the ARUS provides immunity from liability to landowners who make their property available for the recreational use of others." *Roeder v. United States*, 2014 Ark. 156, 2–3, 432 S.W.3d 627, 630 (2014). The statute declares that a landowner "owes no duty of care to keep the premises safe" or "to give any warning of a dangerous condition" to recreational users of its property. § 18-11-304.  There are two exceptions to this immunity, one of which is at play here.

An exception to immunity applies "when the landowner maliciously fails to guard or warn against an ultrahazardous condition, structure, use, or activity actually known to the landowner to be dangerous." *Id.*; Ark. Code Ann. § 18–11–307 (liability not limited "[f]or malicious, but not mere negligent, failure to warn against ultra-hazardous condition. . ."). In 2015, the Arkansas General Assembly defined "malicious" under the ARUS to mean "an

intentional act of misconduct that the actor is aware is likely to result in harm," clarifying that "[m]alicious does not mean negligent or reckless conduct." Ark. Code Ann. § 18-11-302(4). Plaintiff argues that this exception applies because he alleged that TNC knew of the ultrahazardous condition and maliciously, intentionally, and consciously chose not to engage in various actions to make the condition safer or to warn against its dangers.

Assuming for purposes of this motion that the dangerous approach velocities at the submerged culverts qualified as an ultrahazardous condition,[8] the Court finds that Plaintiff has failed to plead sufficient factual matter to bring this case within the exception for malicious conduct. "Malice is not an easy bar to clear under the statute." *Hutchinson v. United States*, 71 F.4th 1115, 1119 (8th Cir. 2023).

In 2013, the Supreme Court of Arkansas accepted certification of the following question from Judge Susan O. Hickey of the United States District Court for the Western District of Arkansas: "Whether 'malicious' conduct, under Ark. Code Ann. § 18–11–307(1), includes conduct in reckless disregard of the consequences from which malice may be inferred." *Roeder v. United States*, 2013 Ark. 451, 1, 430 S.W.3d 667 (2013), *certified question answered,* 2014 Ark. 156, 432 S.W.3d 627 (2014).  The court answered in the affirmative. *Roeder v. United States*, 2014 Ark. 156, 432 S.W.3d 627 (2014). Finding ambiguity in the phrase "malicious but not mere negligent," the court strictly construed the statute as being in derogation of common law. Giving the exception its broadest reading, the court held that malicious conduct "includes conduct in reckless disregard of the consequences from which malice may be inferred" rather

---

[8] TNC contests that the condition was ultrahazardous.  Plaintiff would have to prove that swimming under the conditions present during J.R.A.'s accident "(1) cannot be performed without a risk of serious harm to the person or another, regardless of any precautions taken; and (2) does not normally occur in that community." *Carr v. Nance*, 2010 Ark. 497, 20, 370 S.W.3d 826, 838 (2010).

than "actual malice" as argued by the government.  *Id.* at 635.  The court noted that its decision was formulated "in the absence of explicit direction from the General Assembly." *Id.* at 634.

If this were still the state of the law in Arkansas, Plaintiff's complaint might survive the motion to dismiss, as the failure to act after having been given notice of the danger could allow for an inference of malice.  However, as stated above, the General Assembly amended the ARUS in 2015 to clarify that the term malicious does not mean negligent or reckless.  And it had previously eliminated liability under the ARUS for "willfull . . . failure to guard or warn" in 1983. *Roeder*, 432 S.W.3d at 633.

In this legal context, Plaintiff's allegations that TNC owned the property where the accident occurred, that it learned of the dangerous condition of the bridge before the accident, that it did nothing to warn of or protect against the danger, and that a young boy lost his life as a result are insufficient to bring this action under the exception in the ARUS for malicious conduct. The Court finds that Plaintiff's allegations of TNC's failure to warn or protect do not contain a factual basis that allows the inference that an intentional act of misconduct occurred. For example, Plaintiff does not allege that anyone at TNC made a conscious decision not to post warning signs. *See Moss v. United States*, No. 4:12-CV-4030, 2017 WL 1158087, at *7 (W.D. Ark. Mar. 28, 2017), aff'd, 895 F.3d 1091 (8th Cir. 2018). And while the Alberg Bridge report relays an account of local fishermen of "at least one case" where a person had been pulled into the pipe flow, this account was not verified in the report (and has not been since). The Arkansas General Assembly has set a high bar to establish malicious conduct for purposes of the ARUS, nudged even higher with the 2015 amendment, and Plaintiff has not chinned this bar.

Plaintiff also challenges the constitutionality of the ARUS.[9]  He argues—in a single page—that the statute violates four sections of the Arkansas Constitution:  the right to trial by jury,[10] the open courts provision,[11] the privileges and immunities clause,[12] and the prohibition on damages limitations.[13] The parties agree that the constitutionality of this statute is analyzed under the rational basis standard. *Davis v. Parham*, 362 Ark. 352, 363, 208 S.W.3d 162, 169 (2005). Plaintiff has the burden of overcoming the presumption of the statute's constitutionality. *Id.* The Court's role is to "merely consider whether there is any rational basis which demonstrates the possibility of a deliberate nexus with state objectives so that the legislation is not the product of arbitrary and capricious government purposes." *Id.*  The purpose of the ARUS is "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Ark. Code Ann. § 18-11-301. The Court finds that Plaintiff has not met his burden of overcoming the presumption that there is no rational basis for this stated purpose.

With the conclusion that Plaintiff's claims are barred by the ARUS, TNC's motion to dismiss the complaint against it will be granted.

<u>FIC's Motion to Dismiss</u>

In addition to its claims against TNC, Plaintiff brings an alternate claim for direct action against Federal Insurance Company ("Federal") as an insurer of TNC pursuant to Ark. Code Ann. § 23-79-210.  This statute allows for "a direct cause of action against the insurer with

---

[9] He sets forth two pages of allegations in his complaint "related to the unconstitutionality" of the statute though he does not in fact request a declaratory judgment on the issue. Doc. No. 2, ¶¶ 106-119. Plaintiff alleges that the Arkansas Attorney General was served with a copy of the complaint; no response was filed by the government.
[10] Ark. Const. Art II, § 7.
[11] *Id.*, § 13.
[12] *Id.*, § 18.
[13] *Id.*, Art. V, § 32.

which the liability insurance is carried to the extent of the amounts provided for in the insurance policy as would ordinarily be paid under the terms of the policy" when the insured is not subject to a tort suit. *Id.* In light of the Court's ruling that TNC is immune from suit, Federal's motion to dismiss is denied.

<u>Motions to Amend</u>

After the above motions to dismiss became ripe, Plaintiff filed two motions to amend his complaint to add additional insurers pursuant to the direct-action statute. (Doc. Nos. 40, 45). TNC and Federal have responded to both, and Plaintiff has filed a reply.[14] After consideration of the arguments and the law, the motions to amend are granted.

THEREFORE,

1.      Plaintiff's motion to remand (Doc. No. 20) is DENIED, and Defendant Clayton Word is dismissed without prejudice;

2.      The Nature Conservancy's motion to dismiss (Doc. No. 4) is GRANTED as the Court finds that it has immunity pursuant to the Arkansas Recreational Use Statute; and

3.      Federal Insurance Company's motion to dismiss (Doc. No. 6) is DENIED.

4.      Plaintiff's first and second motions for leave to file an amended complaint (Doc. Nos. 40, 45) are GRANTED.

5.      Federal Insurance Company has until April 15, 2023 to file its answer to the complaint.

IT IS SO ORDERED this 15th day of March, 2024.



UNITED STATES DISTRICT JUDGE

---

[14] The reply has not been separately filed. It is attached as an exhibit to the motion for leave to file, which motion was granted.  Doc. Nos. 46-1, 47.